CIKLIN, J.
LaCrise Moody and Julius Wilson, individually, and as parents and natural guardians of their minor child, S.A.W., (collectively “the Moodys”), appeal the trial court’s entry of final summary judgment against the Moodys in their medical malpractice action against Lawnwood Medical Center, Inc. (“Lawnwood”). The first is *248 sue we address is whether the trial court erred by determining that the releases of two doctors who treated S.A.W. also released Lawnwood from vicarious liability for the acts of the two doctors. We determine that the releases explicitly did not release Lawnwood; thus Lawnwood’s motion for summary judgment should not have been granted on that basis. The second issue before us concerns the imposition of a non-delegable duty upon Lawn-wood to provide competent emergency care to S.A.W. Because there was a disputed issue of fact regarding the existence and content of a hospital admissions form which purportedly discharged Lawnwood from liability,' summary judgment was inappropriate.

Factual Background

S.A.W. was injured in a playground accident. S.A.W.’s mother, LaCrise Moody (“the mother”), brought S.A.W. to a pediatric doctor (“the pediatrician”) at a pediatric health clinic. The pediatrician evaluated S.A.W. and ordered x-rays. A radiologist determined that S.A.W. had a possible right-hip fracture and the pediatrician diagnosed a right-hip fracture based on the x-rays and his evaluation of S.A.W. The pediatrician recommended that the mother bring S.A.W. to Lawn-wood, where the pediatrician had staff privileges.
S.A.W. was admitted to Lawnwood through the emergency department and the pediatrician was the admitting physician. At the time of admission, the mother signed a “Conditions of Admission” form indicating that, among other things, Lawn-wood would provide medical services in exchange for payment. Lawnwood asserts that the mother also agreed to contractual terms contained on the reverse side of the form purportedly limiting Lawnwood’s liability for the acts of independent contractor physicians. The Moodys dispute that the mother ever viewed, received, signed, initialed or otherwise assented to the additional contractual terms allegedly printed on the reverse side of the form.
After S.A.W. was admitted to Lawn-wood, the pediatrician ordered a consultation with an orthopedic physician (“the orthopedist”), who was the on-call orthopedist for Lawnwood when S.A.W. was admitted. The orthopedist evaluated S.A.W. and concluded that she did not have a hip fracture. The orthopedist recommended that S.A.W. be discharged, and the pediatrician discharged S.A.W.
After her discharge from Lawnwood, S.A.W.’s condition worsened. The mother brought S.A.W. to Palms West Hospital. The staff at Palms West diagnosed S.A.W. with a number of conditions, including a fractured right hip, septic arthritis, septic shock, right heart failure, MRSA, and infections throughout S.A.W.’s' body. S.A.W. was hospitalized for ten weeks and had significant long-term health complications.
The Moodys filed suit against Lawn-wood, the pediatrician, the pediatrician’s clinic, the orthopedist, and the orthopedist’s practice. The Moodys’ suit against Lawnwood alleged direct liability for Lawnwood’s negligence and vicarious liability for the acts of its employees, agents, apparent agents, nurses, physicians, and support staff.
The Moodys settled their lawsuits with the pediatrician, the pediatrician’s clinic, the orthopedist, and the orthopedist’s practice, leaving only Lawnwood in the litigation. The Moodys signed two settlement agreements which contained releases: the first with the pediatrician and his clinic, and the second with the orthopedist and his practice. With the exception of the names of the parties, the settlement agreements were identical in the portions *249 relevant to this appeal. Both agreements stated:
The Complaint and pleadings in [this] case are incorporated herein by reference for the purpose of fully, finally and completely releasing any and all claims which have been' asserted and/or which could have been asserted against the Releasees in [this] action.
[[Image here]]
This Release and Discharge shall also apply to this Defendants’ [sic] past and present officers, directors, stockholders, attorneys, agents, alleged apparent agents, heirs, executors, administrators, principals, employers, servants, -representatives, and employees, including, but not limited to, subsidiaries, affiliates, partners, predecessors and successors-in-interest, and assigns these Defendants can be held vicariously responsible for any claims asserted or that could be asserted by[1] the Plaintiffs in this civil action. Additionally, Plaintiffs’ [sic] release any and all persons or entities that can be held vicariously responsible for these Defendants to the extent of liability for the acts or omissions of these Defendants only in their care and treatment of minor child, [S.A.W.]. Specifically, this release does not release Co-defendants, LAWNWOOD MEDICAL CENTER, INC. ... for their potential negligence.
[[Image here]]
This Release is not intended to and shall not operate to release any party other than the specifically designated Releas-ees. Specifically, this Release is not intended to and shall not operate to release LAWNWOOD MEDICAL CENTER, INC .... or any other person or entity affiliated therewith from any claim that is or could be asserted in Civil Action [the lawsuit’s case number]. The Plaintiffs specifically reserve all rights to pursue their claims against LAWNWOOD MEDICAL CENTER, INC....
(All emphasis shown included in original).
After the releases were executed, Lawn-wood moved for partial summary judgment on the Moodys’ claims of vicarious liability against Lawnwood for the actions of the pediatrician and the orthopedist. After a series of hearings and the presentation of extrinsic evidence to show the parties’ intent in executing the releases, the trial court entered partial summary judgment in favor of Lawnwood on the Moodys’ claims of vicarious liability for the acts of the pediatrician and the orthopedist. The trial court also entered partial summary judgment in favor of Lawnwood on the Moodys’ claims that Lawnwood breached a non-delegable duty to provide competent medical care to S.A.W. Final judgment was entered in'the ease, and the Moodys now appeal the trial court’s rulings regarding the releases and the non-delegable duty.

The Releases

We review an order granting summary judgment de novo. E. Qualcom Corp. v. Global Commerce Ctr. Ass’n, 59 So.3d 347, 350 (Fla. 4th DCA 2011) (citation omitted). “Settlement agreements are to be interpreted by the same principles governing the interpretation of contracts.” Pratt v. Weiss, 92 So.3d 851, 854 (Fla. 4th DCA 2012) (citation and internal quotation marks omitted). “It is fundamental that in construing a contract, the intention of the parties must be determined from examination of the whole contract and not from the separate phrases or paragraphs.” Cali v. Meadowbrook Lakes View Condo. Ass’n B Inc., 59 So.3d 363, 367 (Fla. 4th DCA 2011) (internal citation and quotation marks omitted).
*250 We determine that the settlement agreements containing the releases were not ambiguous in any way. These documents plainly did not release Lawn-wood for its potential liability for the acts of the pediatrician and the orthopedist.[1] The provision purportedly releasing Lawn-wood is followed immediately by a sentence stating, “Specifically, this release does not release Co-defendant[ ], Lawn-wood Medical Center, Inc.” (Emphasis removed). Further, and most significantly, the releases state that Lawnwood was not released “from any claim that is or could be asserted” in the Moodys’ suit. The Moodys’ complaint, which was incorporated by reference into the settlement agreement and releases, alleged that Lawnwood was vicariously liable for the acts of the pediatrician and the orthopedist. Thus, these releases specifically stated that Lawnwood was not released “from any claim,” including the vicarious liability claims that the Moodys brought against Lawnwood.

Non-Delegable Duty

The second issue presented in this case is whether Lawnwood had a non-delegable duty to provide competent medical care to S.A.W. The Moodys argue that Lawnwood owed S.A.W. a non-delegable duty and further that there existed no agreement by the mother that the delegation of duty in question also operated to dischai’ge Lawnwood from liability to S.A.W. for any negligence.[2]
In Wax v. Tenet Health System Hospitals, Inc., this court held that the hospital’s admission consent form, signed by the patient, created a contractual duty on the part of the hospital to provide “non-negligent, competent surgical anesthesia services to its patient.” 955 So.2d 1, 11 (Fla. 4th DCA 2006) (citing Pope v. Winter Park Healthcare Grp., Ltd., 939 So.2d 185, 191 (Fla. 5th DCA 2006)). In Wax, we noted: “The critical fact ... is that there is no express agreement by the patient that the delegation of the duty in question also operated to discharge the hospital from liability to the patient for any negligence in its provision.” Id. at 10.
In the instant case, an issue of fact exists regarding the hospital admission form and particularly whether the mother viewed, received, signed or otherwise acquiesced to certain provisions purportedly discharging Lawnwood from liability for the acts of independent contractor physicians. Indeed, the mother specifically denies any such consentaneity. The contractual language in question provides:
Legal relationship between hospital and physicians! Most or all of the health care professionals performing services in the hospital are independent contractors and are not hospital agents or employees. Independent contractors are responsible for their own actions, and the hospital should not be liable for the acts or omissions of any.[3]
*251 In light of our holding, we find it unnecessary to address the remaining issues raised by the parties in this appeal.

Reversed and remanded for further proceedings.

GROSS and LEVINE, JJ., concur.

. We note that extrinsic evidence of the parties’ intent is unnecessary to resolve this case because the releases were unambiguous. See Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1003 (Fla. 2d DCA 1995).

. "The independent contractor/nondelegable duty analysis that inevitably dominates most of the cases in the context of hospital liability is confusing and somewhat misleading because duties that arise under the law of tort and duties that may arise under contract are often intertwined.” Pope v. Winter Park Healthcare Grp., Ltd., 939 So.2d 185, 187 (Fla. 5th DCA 2006).

.We note that the copy of the reverse side of the hospital admissions form included in the record before us was illegible. The source of this quoted contractual language originates from Lawnwood in its answer brief.